# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 11-21077-TLM** |
| **LEONARD O. WALLACE and** | ) | |
| **PAMELA R. WALLACE,** | ) | **Chapter 11** |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION
_____

On August 15, 2011, Leonard O. Wallace and Pamela R. Wallace

("Debtors") filed a voluntary chapter 11 petition commencing this case.[1]  Two

matters are pending before the Court.  The first is a motion for relief from the

§ 362(a) automatic stay filed by creditors Norman and Rodney Hayes ("Hayes

Creditors").  The second concerns the Hayes Creditors' request that the Court

excuse a California receiver for certain real property of Debtors from compliance

with § 543.  These matters were heard on October 12, October 31 and November

1, 2011, and taken under advisement.

## BACKGROUND AND FACTS

This is not the first time Debtors have been before this Court.  On May 14,

2009, they filed a voluntary chapter 11 petition, commencing Case No. 09-20496-

_____

[1]  Unless otherwise indicated, all statutory references, including chapter and section, are
to the Bankruptcy Code, 11 U.S. Code §§ 101-1532, and all rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM OF DECISION - 1

TLM.  That case was ultimately dismissed by the Court.  *See In re Wallace*, 2010

WL 378351 (Bankr. D. Idaho Jan. 26, 2010) ("*Wallace I*").  In its dismissal

decision, the Court set forth the relevant factual background; that summary

remains applicable and is incorporated here:

> Through negotiations with Norman Hayes ("Hayes"), [Leonard]
> Wallace agreed to fund development of a patented identification bolus
> for cattle and other livestock in exchange for an ownership interest in
> the company purporting to own the patent, MagTrac Bolus, LLC.
> Wallace provided funding over a period of time and acquired a
> substantial interest in MagTrac Bolus, LLC.  But, in the process of
> developing the bolus, the relationship between Wallace and Hayes
> deteriorated.  Ultimately, Wallace initiated a lawsuit against Hayes,
> MagTrac Bolus, LLC and the remaining members of MagTrac Bolus,
> LLC in Montana state court.  Based on MagTrac Bolus, LLC's
> operating agreement, the dispute was sent to arbitration in Wyoming.

> The arbitrator found that both Hayes and Wallace breached
> their fiduciary duties toward MagTrac Bolus, LLC and its members.
> . . .  The arbitrator determined judgment would be entered against
> Wallace in favor of MagTrac Bolus, LLC for $2,500,000.00 based in
> large part on the arbitrator's finding that Wallace attempted to market
> the identification bolus patent individually and not on behalf of
> MagTrac Bolus, LLC.  The arbitrator also determined Wallace would
> be entitled to judgment against Hayes for various other amounts.

> Wallace requested the arbitration award be modified and argued
> that issues concerning ownership of the bolus patent, which were not
> disclosed during the arbitration process, constituted fraud by Hayes and
> should result in a modification to the arbitration award.  . . .  The
> arbitrator initially stayed its proceedings pending litigation in
> Wyoming state court over the ownership of the bolus patent.  However,
> prior to the resolution of that litigation, the arbitrator lifted its stay and
> entered supplemental findings and conclusions affirming its earlier
> award.  . . .  Wallace appealed the arbitrator's award, but the Montana
> courts affirmed the decision.

> After Wallace's appeals in the Montana state courts were
> unsuccessful, MagTrac Bolus, LLC recorded its judgment in California

MEMORANDUM OF DECISION - 2

> where Debtors own several industrial/commercial rental properties. MagTrac Bolus, LLC assigned its judgment against Wallace to the Hayes Creditors. The Hayes Creditors levied on the rents from Debtors' California properties and had the California court appoint a receiver to collect the rents and market those properties for sale in order to satisfy their judgment. The Hayes Creditors also recorded their judgment in Idaho and Washington.

*Id.* at *1 (footnotes omitted).

Debtors maintain, strenuously, that the arbitration ruling[2] and resultant Montana judgment[3] of the Hayes Creditors were obtained through fraud. This is based in significant, if not sole, part on Debtors' allegation that Hayes concealed from the arbitrator certain information that indicated the bolus patent was actually owned by Irene Linseth, not MagTrac Bolus, LLC.[4] Wallace brought this information to the attention of the arbitrator, who initially stayed his decision.[5]

---

[2] Exhibit 215 (decision and award of July 31, 2003). A "final report and order" of December 23, 2003, is referenced by the parties but was not introduced into evidence.

[3] An "Amended Judgment" was entered in *Wallace v. Hayes, et al.*, Case No. DV 01-882, Montana Thirteenth Judicial District Court, Yellowstone County, on August 10, 2004. It was based on an April 2004 hearing on a motion of the Hayes to confirm the arbitration award and a motion of the plaintiff, Wallace, to vacate the award. The Montana court confirmed the arbitrator's decision of July 31, 2003, and final report and order of December 23, 2003. Among other rulings, the Montana court awarded judgment to defendants and against Wallace for $2.5 million. Both Wallace and the defendants were represented by counsel. *See* Ex. 100 (proof of claim) at 4-7. On or about June 17, 2009, findings, conclusions and an order were entered by the Montana court, awarding attorney's fees and costs. *Id.* at 33-63. It summarized the outstanding balance of the original judgment, plus the fees and costs, as being $6,168,867.31 as of January 2, 2009. *Id.* at 63.

[4] The information was based on an affidavit of Irene Linseth dated June 30, 2003.

[5] In the August 18, 2003, order staying his decision, Exhibit 216, the arbitrator noted that a pending South Dakota state court action, brought to his attention by Wallace, could result in a decision adverse to the defendants and might result in the quieting of title to the "Linseth Patent" in Wallace and against the interests of all defendants in the arbitration and in the Montana litigation. *Id.*

MEMORANDUM OF DECISION - 3

However, the arbitrator later issued its final order in December, 2003, against Wallace, and that arbitration ruling was affirmed by the August, 2004, judgment of the Montana court.  Debtors argue that the process before both the arbitrator and subsequently the Montana court was unfair, in large part because those tribunals did not listen to the arguments made by Wallace or credit the evidence that Wallace attempted to present.[6]

Prior to the 2009 bankruptcy, the Montana judgment was registered in California as a foreign judgment and then recorded, giving the Hayes Creditors a judgment lien.  As the underlying judgment was against Mr. Wallace, the lien attached to his separate and community property.  Debtors had interests in three parcels of real property in California.  Debtors owned as community property certain commercial buildings located at 6060 Nicolle Street and 6059 King Drive in Ventura, California, and owned as tenants in common a business property at 561 Kinetic Drive in Oxnard, California.  The parties agree that the judgment lien encumbers all of the Nicolle Street and King Drive properties in Ventura, and Mr. Wallace's one-half joint tenant interest in the Kinetic Drive property in Oxnard.

Following recordation of the judgment, the Hayes Creditors levied on the

---

[6]  During testimony on October 31, Wallace appeared to suggest that the arbitrator or Montana court refused to consider his proffer of the judgment of the South Dakota court, Exhibit 213.  However, that exhibit is an order in *Linseth v. Hayes, et al.*, Case No. 03-213, Circuit Court, Seventh Judicial Circuit of the State of South Dakota, Pennington County, dated March 30, 2006, which of course is long after the events giving rise to the judgment.  In another portion of his testimony, however, Wallace acknowledged that it was several years after the arbitrator's and Montana court's rulings that the South Dakota litigation was finalized.

MEMORANDUM OF DECISION - 4

rents paid by tenants of the three properties by obtaining, in February 2009, the appointment of a receiver by the California court to collect the same and, after payment of taxes and other expenses, apply the net toward the judgment. The receiver was also authorized to sell the properties and apply the proceeds to the judgment.[7]

After dismissal of the 2009 bankruptcy, the Nicolle Street property was sold for $1,800,000. The net proceeds of approximately $1,674,000 were applied toward the judgment, leaving a net amount owed the Hayes Creditors of roughly $4,891,000. The receiver continued to collect the rents on the King Drive property, and one-half the rents on the Kinetic Drive property.

Debtors filed the present case on August 15, 2011. Their original schedules, filed on September 9, 2011, disclosed, as Debtors' sole real property holding, a residence in Post Falls, Idaho, worth $1,536,979 and against which there are secured claims of $1,864,086. Doc. No. 30 at 1.[8] Amended schedules

---

[7] Debtors argue that the orders of the California court, including the receiver's appointment, were also obtained through fraud. Testimony clarified that the fraud alleged was the advancing of the Montana judgment without disclosure of the conflicting evidence of the alleged Linseth interest in the patent. Debtors concede there were no other errors or deficiencies in the California process. However, in connection with the alleged "concealment" of the purported defects in the Montana judgment, it should be noted that the order appointing the receiver reflects that Wallace was represented by counsel at the hearing in California preceding such order, and that his attorney endorsed the form of order ultimately entered. Ex. 100 at 65-67.

[8] The Court takes judicial notice of its files and records under Fed. R. Evid. 201, and it treats statements made by Debtors under penalty of perjury in their schedules and statements as admissions under Fed. R. Evid. 801(d). *See, e.g., Murrietta v. Fehrs (In re Fehrs)*, 391 B.R. 53, 62 n.16, 08.3 I.B.C.R. 116, 118 n.16 (Bankr. D. Idaho 2008).

MEMORANDUM OF DECISION - 5

were subsequently filed on October 11, 2011.  Ex. 101.[9]  Amended Schedule A

indicates that, in addition to the Post Falls residence, Debtors own as community

property and in fee simple the commercial/industrial property at Kinetic Drive

(valued by Debtors at $2,200,000, with no secured debt) and King Drive (valued

at $2,000,000, with $271,470 of secured debt).  Amended Schedule D indicates

that Keystone Mortgage holds the disclosed secured claim on the King Drive

property.  *Id.*[10]

On their amended Schedule B, Debtors list as community property their

ownership interests in a number of limited liability companies.  Ex. 101 at 5-7.  It

appears that Debtors claim to hold a 100% interest in Nelmap, LLC ("Nelmap")

(which in turn holds 100% interests in LOWPRW, LLC; Lenton Rose, LLC;

Blossom Properties, LLC, and/or Raspberry Ridge, Inc.; and Big Velvet Ranch,

LLC) and in Touve, LLC ("Touve") (which holds 100% interests in LOWIND,

LLC and Iron Rooster, LLC).  Wallace testified that Touve and Nelmap were

---

[9]  Both the original schedules of September 9 and the amended schedules of October 11
were filed *after* the Hayes Creditors had filed their motion for relief from the § 362(a) stay
regarding the California properties, Doc. No. 22 (filed September 1, 2011).

[10]  The Nicolle Street, King Drive, and Kinetic Drive properties were all listed as
Debtors' personally held assets in the 2009 bankruptcy.  Exs. 110 & 111; *see also Wallace I* at *2
(discussing omission of the properties on Debtors' original 2009 schedules, and later amendment
to include the same).  The 2011 amended Schedule D also indicates that the King Drive property
was "contributed" to LOWPRW-Joint, LLC but that this transfer was "set aside" as to the Hayes
Creditors by a California court.  Ex. 101 at 16.  LOWPRW-Joint, LLC is listed on amended
Schedule B as a limited liability company wholly owned by "Nelmap, LLC", which in turn is
wholly owned by Debtors.  Ex. 101 at 6.  ("LOWPRW" is an acronym of the initials of Leonard
and Pamela Wallace.)  This amended Schedule B asserts that LOWPRW-Joint, LLC holds the
King Drive and Kinetic Drive real properties (notwithstanding the sworn assertion in amended
Schedule A) and that the net value of those properties is $3.391 million.  *Id.*

MEMORANDUM OF DECISION - 6

"holding companies" formed in 2007.  He indicated that ownership of these two

holding companies rested in either Debtors or Nevada "trusts" that Debtors were

creating in 2010 as part of "estate planning" efforts.  In testimony on October 31,

both he and Ms. Wallace were uncertain if any trusts had actually been formed or

legally created.  Wallace also acknowledges that the California court set aside any

purported transfer of the King Drive or Kinetic Drive properties into LOWPRW,

LLC ("LOWPRW").

      The Hayes Creditors filed, on October 28, 2011, a proof of claim in this

case, asserting a total amount owed of $5,010,787.63.  They claim to hold a

security interest in the King Drive property and its rents, and in one-half of the

Kinetic Drive property and its rents.[11]  Debtors indicated an intention to object to

that proof of claim, but as of hearing had not done so nor have they done so since.

      On August 3, 2011, just prior to filing the present chapter 11 case, Debtors

filed an action in the United States District Court for the District of Montana,

Billings Division ("Montana District Court").  Ex. 217.  This suit, brought against

the Hayes Creditors and MagTrac Bolus, LLC, seeks relief in two primary ways.[12]

The first is for an order or orders "rescinding the parties' agreement for Wallace's

---

[11]   The Hayes Creditors concede that the underlying judgment is against Mr. Wallace.
They take the position that the judgment reaches all of his separate and community property
interests but that it does not reach or attach to Ms. Wallace's joint tenant interest in the Kinetic
Drive property.  Debtors do not contest this analysis, should the judgment be ultimately held
valid, though they do argue that the judgment, given taint of fraud, should not be effective at all.

[12]   The complaint is poorly pleaded, and the Court has attempted here to interpret it.

MEMORANDUM OF DECISION - 7

investment in Magtrac Bolus, LLC" on the theories of breach of contract, failure

of consideration, and "unilateral mistake." Debtors request that these orders

include the "return" of all amounts the defendants (*i.e.*, MagTrac Bolus, LLC and

the Hayes Creditors) collected from Wallace or Debtors under the Montana court's

judgment. The second is for an order "vacating" the Montana court's judgment on

the basis that it was obtained by fraud or because it was not supported by a final or

valid arbitration order, and enjoining any further collection upon that judgment.

Wallace testified that he is attacking the Montana court's judgment through

this new federal suit, and prospectively through claim objection or other

litigation[13] before this Bankruptcy Court, because the history of litigation before

the Montana state court persuades him that direct relief in that court would be

unsuccessful.[14]

As noted, the Hayes Creditors were collecting on the judgment in

California, utilizing their state court-appointed receiver to collect rents and pursue

sale of the properties. The Hayes Creditors also domesticated the Montana

---

[13]  As noted, there is no objection to the Hayes Creditors' proof of claim. There also has
been no other litigation (*e.g.*, adversary proceeding) filed in this Court against them.

[14]  Wallace expresses great opprobrium for the presiding judge in the Montana state court
litigation. He suggests that hearings were unfair and rulings were made either without
considering what Wallace and his lawyers presented, or by rejecting their arguments after a
hearing at which his lawyers appeared but without being allowed a "factual" hearing on their
contentions. Wallace suggests that advice from a Montana lawyer was that relief should be
sought by action in some other court, including a specific reference to a bankruptcy court, rather
than seeking relief from the court that had entered the allegedly tainted judgment. In addition, it
should be noted that Wallace commenced, but abandoned, appellate review of the Montana
judgment.

MEMORANDUM OF DECISION - 8

judgment in Idaho, and pursued collection against Debtors' assets there. The present bankruptcy was filed on the eve of a hearing in Idaho state court on a motion brought by the Hayes Creditors seeking to impose remedies for alleged fraudulent transfers of assets, made by Debtors to certain limited liability companies, and to enjoin any further similar transfers.

Since filing this case, Debtors have remained in possession of their assets. On September 1, 2011, the Hayes Creditors filed a motion to excuse the California receiver's compliance with § 543, Doc. No. 18. The Court, at a hearing on October 12, 2011, ordered the receiver for the Hayes Creditors to file a report and accounting, but reserved ruling any further on the request of the Hayes Creditors for relief from the requirements of § 543. The required report was filed on October 26, 2011. Ex. 105.

The evidence reflects that, in September and October, Debtors collected the rents from the King Drive and Kinetic Drive properties. Those funds were deposited into LOWPRW accounts, not debtor in possession ("DIP") accounts. Out of these funds, a $10,000 "loan" was made to Iron Rooster, LLC ("Iron Rooster"). Wallace testified that, after Debtors were informed by the United States Trustee that all Debtors' funds had to be handled and accounted for through DIP accounts, the loan to Iron Rooster was paid back and the funds were moved to the proper account, with the exception of some $2,000 paid to or for the benefit of

MEMORANDUM OF DECISION - 9

Raspberry Ridge, Inc. ("Raspberry Ridge") and some funds kept by Wallace.[15]

When shown Debtors' monthly operating report ("MOR") for September 2011,

Wallace testified to the effect that "I don't examine these in great detail; I

generally just look them over."  Wallace did testify that, while he thought it made

sense to put the rents in a LOWPRW account, thus explaining why Debtors

initially did so, he and Ms. Wallace intended to use the DIP accounts going

forward.

Debtors' August MOR, filed September 22, 2011, and admitted as exhibit

114 at the hearing, shows income to Debtors of $9,803 and net income of $1,360

after expenses.  The income represents "draws" from Iron Rooster, LOWIND,

LLC ("LOWIND"), LOWPRW, and Raspberry Ridge.  The September MOR,

filed October 21, 2011,  shows income of $13,689 and net income of -$8,787 after

expenses of $22,477.  *See* Doc. No. 68.[16]  This income consists of $12,900 in

"rentals" and draws from LOWIND and Touve (and a "draw" from Iron Rooster

of -$1,013, which suggests a payment rather than a draw).  In closely looking at

the income statements in the two MORs, it is clear that the "total post-petition"

---

[15]  By virtue of California Code of Civil Procedure § 697.710, the Hayes Creditors are
secured in the rents.  *See* note 23 *infra* and accompanying text.  The rents are therefore "cash
collateral" under § 363(a), and Debtors could not use those funds without a court order or creditor
approval, neither of which was obtained by Debtors.  *See* § 363(c)(2).

[16]  The September MOR was marked as exhibit 117, but never offered into evidence.
The Court takes judicial notice of its contents.  *See* note 8 *supra*.

MEMORANDUM OF DECISION - 10

figures are not accurate.[17]  What can be drawn from the reports is the conclusion

that the income and expenses since filing are not in the amounts projected in

Debtors' Schedules I and J, which asserts monthly income of $10,000.00 from

LOWPRW, $9,291.67 from Iron Rooster, and $1,459.00 from Social Security (a

total monthly income of $20,750.67), and average monthly expenses of $8,425.00,

resulting in available net monthly income of $12,325.67.  What can also be

extracted from the MORs is that Debtors are expending the funds they do draw

from their entities at an exorbitant and unjustified rate, with numerous

questionable and unexplained expenditures.

Debtors are no strangers to the duties the Code imposes on debtors in

possession.  In *Wallace I*, dismissal of the chapter 11 case hinged in significant

part on the losses to and diminution of the estate, including the spending of cash at

a significant rate, incomplete and incoherent financial reporting in the MORs, and

confusion over the "shareholder loans" and "owner draws" Debtors elected to take

from their closely-held entities.  2010 WL 378351, at *3.  Further, the failure to

comply with DIP fiduciary duties imposed by the Code, including improper

payment of prepetition debts and unauthorized "loans" between Debtors and their

related entities, was a basis for finding gross mismanagement.  *Id.* at *4-5.  This is

---

[17]   There are only two MORs filed.  The income and expenses shown as "current month"
in August and September (column one of each MOR) should be aggregated to result in a "total
post-petition" figure in column two of the most recent MOR (September).  With only a few
exceptions, they do not reconcile.

MEMORANDUM OF DECISION - 11

not, therefore, the first time that Debtors have been presented with the United

States Trustee's Guidelines, nor been made aware of the strict limitations the Code

places on debtors in possession.  Yet the same types of behavior manifested in the

evidence in *Wallace I*, and upon which dismissal in that earlier case was premised,

are repeated in this case.

The "loan" to or from Iron Rooster in the instant case was not authorized

by the Code or Court order.  The deposit of rents from the California properties –

properties that Debtors in this case affirmed (though belatedly) are personally held

– into the LOWPRW account was improper.  And a review of the spending detail

in the two MORs reflects a disregard for the obligations imposed on Debtors.[18]

Given that unrestrained personal spending was a material factor in dismissal of the

prior chapter 11 case, *id.* at *3, the behavior in the present chapter 11 case is even

more problematic.

However, the issues presently before the Court in this case are not those of

dismissal under § 1112(b) as they were in *Wallace I*.  Rather, the sole matters

presented for decision are relief from stay, and the question of the extent to which

the Hayes Creditors' receiver will be required to comply with § 543.

---

[18]   The August and September MORs show an inordinate number of debit charges made
by Ms. Wallace at restaurants, stores, car washes, and hotels, as well as several ATM cash
withdrawals, usually with several transactions reported each day.

MEMORANDUM OF DECISION - 12

**DISCUSSION AND DISPOSITION**

**A.  Relief from Stay**

The Hayes Creditors seek relief from the automatic stay to continue with

the collection of rents on the California properties by the receiver, and to permit

the continuation of the receiver's efforts to sell the properties and apply the

proceeds to their claim.  *See* Doc. No. 22.  They contend that relief is proper under

both § 362(d)(1) and (2).  *Id.* at 6-8.  Those sections provide that, after notice and

a hearing, a bankruptcy court shall grant relief from the automatic stay:

> (1) for cause, including the lack of adequate protection of an interest in
> property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a)
> of this section, if –
>> (A) the debtor does not have an equity in such property; and
>> (B) such property is not necessary to an effective reorganization[.]

As the party requesting relief from the stay, the Hayes Creditors bear the burden of

of establishing a lack of equity in the California properties.  *See* § 362(g)(1).  As

the party opposing the requested relief, Debtors shoulder the burden of proof on

all other issues.  *See* § 362(g)(2).

**1.      The Montana judgment**

Debtors' defense in connection with the § 362(d) motion, and strategy in

this entire chapter 11 case, depends on the vacation or negation of the Montana

state court judgment.  In essence, Debtors contend that because the Montana

judgment is tainted by fraud, the Hayes Creditors do not have an enforceable

MEMORANDUM OF DECISION - 13

claim against Debtors and therefore hold no cognizable lien interest in the California properties and the rents generated therefrom.  Since this issue impacts an analysis under either § 362(d)(1) or (2), the Court will address it first.

Initially, the Court notes the scope of stay relief proceedings.  Such proceedings are summary in nature and limited to determining whether there are "sufficient countervailing equities to release an individual creditor from the collective stay."  *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 914 (9th Cir. BAP 2011).  Thus, a relief from stay proceeding is not an appropriate vehicle for finally and definitively determining a creditor's claim or security.  *Id.*; *see also Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir. 1985) ("Hearings on relief from the automatic stay are thus handled in a summary fashion.  The validity of the claim or contract underlying the claim is not litigated during the hearing.") (citations omitted).[19]

Given the limited nature of the relief available, the expedited hearing schedule,[20] and because final adjudication of the parties' rights and liabilities often has yet to occur, courts have held that a party seeking stay relief need only establish that it has a colorable claim to enforce against property of the estate.  *Veal*, 450 B.R. at 914-15.  Once the moving party has established a prima facie

---

[19]   Such determinations are better left to other, more fulsome proceedings either within the bankruptcy process (*e.g.*, claim litigation) or outside in a nonbankruptcy context (*e.g.*, judicial foreclosure).

[20]   *See* § 362(e).

MEMORANDUM OF DECISION - 14

case that relief from the stay is proper, the burden shifts to the debtor to show that the requested relief is not warranted.  *See* 362(g); *United States v. Gould (In re Gould)*, 401 B.R. 415, 426 & n.15 (9th Cir. BAP 2009).

The Hayes Creditors have established a colorable claim against Debtors. They assert a secured claim on the California properties based on the Montana judgment and the creation of lien under California law through registration and recordation of that judgment.  To support their claim the Hayes Creditors provided the Court with copies of the Montana judgment, the California abstract of judgment, and the California order appointing the receiver.  *See* Ex. 100 (proof of claim).[21]  Debtors have not challenged the authenticity of these documents.

Debtors have not persuaded the Court that they are likely to prevail in their collateral attack on the Montana judgment through the Montana District Court or through litigation before this Court.  While the evidence indicates that an action was filed in the Montana District Court, with the intent of attacking the finality or effect of the Montana judgment, the evidence also established that this suit has not progressed beyond the mere filing of the complaint.  And Debtors have not, to this point, objected to the Hayes Creditors' proof of claim or initiated any other litigation in this case to attack the validity and enforceability of the Montana

---

[21]  Debtors have not objected to the Hayes Creditors proof of claim in this case.  Not only does this mean that, at present, the Hayes Creditors have an allowed claim, *see* §§ 501-502, the proof of claim itself "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

MEMORANDUM OF DECISION - 15

judgment.

Additionally, the Court perceives significant legal hurdles to Debtors'

attack on the Montana judgment.  Successfully advancing this strategy requires

more than just Debtors' accusations of fraud, and more than their assertion – even

if embodied in the newly-filed Montana District Court suit – that the Montana

judgment should be found unenforceable and ineffective.  The Full Faith and

Credit Act requires federal courts to give state court judgments the same

preclusive effect those judgments would enjoy under the law of the state in which

the judgment was rendered.  28 U.S.C. § 1738;[22] *Harmon v. Kobrin (In re*

*Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001); *Far Out Prods., Inc. v. Oskar*, 247

F.3d 986, 993 (9th Cir. 2001); *Lee v. TCAST Commc'ns, Inc. (In re Lee)*, 335 B.R.

130, 138 (9th Cir. BAP 2005); *see also* Restatement (Second) of Judgments § 86

(1982).  The Supreme Court has stated: "We have made it clear that it is for the

court of first instance to determine the question of the validity of the law, and until

its decision is reversed for error by orderly review, either by itself or by a higher

court, its orders based on its decisions are to be respected."  *Celotex Corp. v.*

*Edwards*, 514 U.S. 300, 313 (1995) (quoting *Walker v. Birmingham*, 388 U.S.

307, 314 (1967)).  Accordingly, the circumstances in which collateral attacks are

---

[22]   The Full Faith and Credit Act, 28 U.S.C. § 1738, provides in pertinent part that state court decisions "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

MEMORANDUM OF DECISION - 16

proper are extraordinarily limited.

A related principle, also apparently implicated by Debtors' approach to attacking the Montana judgment, is the *Rooker-Feldman* doctrine, derived from the cases of *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This is "a well-established jurisdictional rule prohibiting federal courts from exercising appellate review over final state court judgments." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858-59 (9th Cir. 2008). The Ninth Circuit has recognized that "[t]he clearest case for dismissal based on the *Rooker-Feldman* doctrine occurs when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)). *Rooker-Feldman* may also apply where there is not a direct contest of the merits of a state court decision, because the doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment." *Reusser*, 525 F.3d at 859 (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004).

Though at this juncture the Court need not decide with finality the impact of the *Rooker-Feldman* doctrine on Debtors' attempts to attack the Montana judgment, it notes that the *Rooker-Feldman* doctrine would appear to present an obstacle to Debtors achieving a vacation or other negation of the Montana state

MEMORANDUM OF DECISION - 17

court judgment through the suit recently filed in the Montana District Court or any

prospective litigation before this Court.  Yet Debtors at no time addressed this – or

any other – legal principle relating to their attempts to attack and render

unenforceable the Montana judgment, despite the fact that their entire chapter 11

case, as well as their defense to this § 362(d) motion, hinges on being able to

successfully do so.

Under these authorities, and given Debtors' inability to explain why the

Montana judgment should not be given full faith and credit under such authorities,

this Court is constrained to respect that judgment.  As a result, for purposes of this

motion the Court treats the Hayes Creditors' lien as valid and effective.  Having

determined to do so, the Court turns to the elements of § 362(d)(1) and (2),

addressing (d)(2) first.

### 2.    Section 362(d)(2)

The Hayes Creditors carried their burden of proving a lack of equity in the

California properties.  Equity, for purposes of § 362(d), exists if there is value in

property in excess of all the claims secured by that property.  *In re Jordan*, 392

B.R. 428, 447 (Bankr. D. Idaho 2008) (citing *Pistole v. Mellor (In re Mellor)*, 734

F.2d 1396, 1400 n.2 (9th Cir. 1984)).  The California properties have, pursuant to

Debtors' amended schedules, a total value of $ 4,200,000.  The Hayes Creditors

accept that figure for purposes of this stay relief motion.  No other, credible

evidence of value was presented by Debtors.  Combining the Hayes Creditors'

MEMORANDUM OF DECISION - 18

asserted claim of $5,010,787.63 with Keystone Mortgage's $271,470.00 secured

claim against the King Drive property results in total secured claims of

$5,282,257.63, leaving no equity in the properties for Debtors' estate. Indeed,

during argument Debtors' counsel effectively conceded a lack of equity should the

judgment lien be considered effective.

Likewise, there is no equity in the rents generated from the California

properties as the Hayes Creditors are secured in those rents under California Code

of Civil Procedure § 697.710.[23]

Notwithstanding the lack of equity in the California properties, Debtors

argue that those properties and the rents generated therefrom are necessary for

their effective reorganization.[24]  *See* § 362(d)(2)(B).  It is well accepted that this

requires Debtors to establish that there is a reasonable likelihood of a successful

reorganization within a reasonable period of time.  *Jordan*, 392 B.R. at 450 (citing

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S.

365, 375-76 (1988)).

---

[23]  Cal.C.C.P. § 697.710 provides:

A levy on property under a writ of execution creates an execution lien on the property from the time of levy until the expiration of two years after the date of issuance of the writ unless the judgment is sooner satisfied.

[24]  At hearing, Debtors' counsel made a direct, though unformed and vague, argument that a different standard should apply to a secured judgment lien creditor seeking stay relief than to a consensually secured creditor seeking such relief.  Debtor offered no statutory or other support for the argument, and the Court's questioning was unsuccessful in eliciting any basis for it.  Bereft of any authority, this contention advanced by Debtors is rejected.

MEMORANDUM OF DECISION - 19

Debtors attempts at supporting this assertion by claiming that the California properties will generate sufficient income in rentals, or equity in sale, to fund a successful reorganization were unavailing as an economic proposition. Further, and importantly, the viability of a plan in this chapter 11 case is premised in significant part on the ability to obtain a vacation of the Hayes Creditors' Montana judgment from either the Montana District Court or from this Court. For the reasons noted, that proposition was not established as a reasonable likelihood. Further, a successful reorganization would here need to address the multiple business entities owned by Debtors, from which they derive most if not all their income, and consider the ability of Debtors to comply with the fiduciary and other requirements imposed on debtors in possession under the Code, something they failed to do in *Wallace I,* leading to dismissal of that chapter 11 case, and something that – by all indications – they appear to be failing to do in this serial chapter 11 case.

Because there is a lack of equity in the California properties and Debtors have failed to demonstrate that those properties are necessary for an effective reorganization, the Court concludes that the Hayes Creditors are entitled to relief from the automatic stay under § 362(d)(2).

### 3.    Section 362(d)(1)

Given the evidence and findings above, the Court also concludes "cause" exists, including lack of adequate protection, to grant the Hayes Creditors stay

MEMORANDUM OF DECISION - 20

relief under § 362(d)(1).  There is no equity cushion in the California properties

for the Hayes Creditors and Debtors have not made, nor proposed, adequate

protection to the Hayes Creditors.  Relief under § 362(d)(1) is thus appropriate.

### B.      Section 543

Finally, the Hayes Creditors contend there is good cause under the

circumstances to excuse the California receiver from compliance with the

requirements of § 543.  The Court agrees.

Section 543(a) and (b) mandate that a custodian, which is defined by

§ 101(11)(A) to include a state-court appointed receiver, turn over to the

bankruptcy trustee or a debtor in possession any property of the debtor or the estate

that is in the possession, custody, or control of the custodian, and to make an

accounting of such property.  These requirements embody a policy favoring the

turnover of business assets to the debtor in a chapter 11 reorganizations.  *See In re*

*Orchards Village Invs., LLC*, 405 B.R. 341, 352 (Bankr. D. Or. 2009) (citing 5

Collier on Bankruptcy ¶ 543.05 (Alan N. Resnick & Henry J. Sommer eds., 15th

ed. rev. 2009)).

However, under § 543(d) a bankruptcy court, after notice and hearing, may

excuse compliance with § 543(a) or (b) if the interests of creditors would be better

served by permitting a custodian to continue in possession, custody, or control of

the property.  To determine whether to excuse compliance with § 543, courts may

consider a number of factors, including "(1) whether there will be sufficient

MEMORANDUM OF DECISION - 21

income to fund a successful reorganization; (2) whether the debtor will use the

property for the benefit of its creditors; and (3) whether there has been

mismanagement by the debtor." *Orchard Village Invs.*, 405 B.R. at 353 (quoting

*Dill v. Dime Sav. Bank, FSB (In re Dill)*, 163 B.R. 221, 225 (E.D.N.Y. 1994)).

Here, consideration of these factors in light of the evidentiary record

suggest that excusing the receiver from the requirements of § 543 is appropriate.

First, as noted previously, the California properties and rents are not necessary for

an effective reorganization.  The rental income or equity of the properties is

insufficient to cover taxes, maintenance, and service the secured claims on those

properties.  Without vacation of the Montana judgment and the Hayes Creditors'

claim (an unlikely proposition) Debtors have been unable to show how there will

be sufficient income to fund a chapter 11 plan.  Furthermore, Debtors have

demonstrated a general disregard concerning their DIP duties to the estate and

creditors.  Since filing their petition they have deposited rents from the California

properties into LOWPRW accounts, rather than DIP accounts, and loaned or paid

those funds to other closely-held entities.  Their testimony also manifested a

cavalier attitude regarding the MORs and the financial reporting requirements

imposed by the Code.  The Court is not convinced Debtors will use the rental

income from the properties for the benefit of their creditors.

Given these considerations, and the Court's decision herein to grant the

Hayes Creditors' relief from the stay, the Court concludes that the interests of

MEMORANDUM OF DECISION - 22

creditors would be better served by permitting the receiver to continue in possession, custody, and control of the California properties and rents.

**CONCLUSION**

Based on the foregoing, the Hayes Creditors have established a right to relief from the automatic stay under both § 362(d)(1) for cause and under § 362(d)(2).  Such relief will be granted.

Additionally, the Hayes Creditors' motion to excuse compliance with § 543 as to the receiver will be granted.[25]

Counsel for the Hayes Creditors shall submit a proposed order in accordance with this Decision.

DATED: November 18, 2011



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[25]  The prior order of the Court, *see* Doc. No. 51 (minute entry of October 12, 2011, hearing), required the receiver to file an accounting under § 543(b)(2).  That order was satisfied and no more filings will be required of the receiver.

MEMORANDUM OF DECISION - 23